**J.W. PRUITT, Jr., Plaintiff,**

v.

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al., Defendants.**

**Civ. A. No. C85–3036A.**

United States District Court, N.D. Georgia, Atlanta Division.

May 13, 1987.

Frank I. Specht, Specht & McKenzie, Atlanta, Ga., for plaintiff.

Edward J. Gorman, United Broth. of Carpenters and Joiners of America, Washington, D.C., James T. Langford, Jacobs & Langford, Atlanta, Ga., for defendants.

## ORDER

SHOOB, District Judge.

### I. *Introduction*

Pursuant to the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq.*, plaintiff J.W. Pruitt, Jr. ("Pruitt") brought this action against his local and national union. Pruitt alleges that, in retaliation for his exercise of rights protected by the LMRDA, the national union placed his local under trusteeship and prevented him from assuming an elected position as a business representative. Defendants have moved for summary judgment under Rule 56, Fed. R.Civ.P. For the reasons stated below, defendants' motion will be granted in part and denied in part with leave to renew.

### II. *Background*

The parties' dispute can be traced to the dissention that plagued the Atlanta and Vicinity District Council of Carpenters ("District Council") in 1983 and 1984. Until its dissolution, the District Council was an intermediate labor organization of defendant United Brotherhood of Carpenters and Joiners of America ("UBC") and was comprised of nine UBC locals. Pruitt's local, Local 225, was by far the largest member of the District Council; in fact, Local

225's membership exceeded the combined membership of the eight other locals in the District Council.

At a Local 225 meeting held in January 1983, the membership railed against the District Council's handling of the area-wide collective bargaining agreement. To pursue that grievance, Local 225 sent to Washington, D.C., a delegation of six members, including Pruitt. That delegation asked UBC General President Patrick J. Campbell ("Campbell")[1] to merge all Atlanta area locals and thus obviate the need for the District Council. Campbell indicated he would consider the delegation's request.

During the following months, relations between the District Council and the locals grew increasingly contentious. The situation reached its nadir in September 1983, when, seeking to void the area-wide collective bargaining agreement, Local 225 voted to file suit against the District Council. The local allocated $50,000 to fund the lawsuit and granted Pruitt and two other Local 225 members the authority to prosecute the case.

At this point, the national union asserted itself. In January 1984, a three-member UBC Executive Board panel (the "Hearing Committee") commenced hearings regarding the dispute. After hearing considerable testimony, the Hearing Committee recommended that Local 225 be placed under the supervision of a trustee. This recommendation was based on the following findings:

(1) Local 225's business representatives failed to follow the District Council's instructions;

(2) Local 225 violated procedures for referring unemployed carpenters;

(3) A bitter dispute existed as to the District Council's handling of a potential wage freeze; and

(4) Local 225 disregarded the UBC Constitution by giving $50,000 in UBC funds to the committee prosecuting the suit against the District Council.

On March 29, 1984, the Executive Board remanded the matter to the Hearing Committee for a determination whether the entire District Council should also be placed under trusteeship. On remand, the Hearing Committee answered this inquiry in the affirmative based on the following findings:

(1) The District Council breached hiring procedures and contractual responsibilities;

(2) There were frequent false membership applications;

(3) District Council meetings were often chaotic; and

(4) The District Council's various problems had harmed its collective bargaining strength, organization, and decisionmaking.

The Executive Board adopted the Hearing Committee's recommendation, and on August 2, 1984, defendant Edward L. McGuffee ("McGuffee") became trustee of the District Council. His mandate provided the authority to run daily operations, to suspend Local 225 and District Council autonomies, and to hire and fire elected and appointed union employees. Pursuant to the latter grant of authority, McGuffee discharged the officers, business representatives, delegates, and committees but then reappointed all except the committees on an at-will basis.

Resolving Local 225's lawsuit against the District Council was apparently McGuffee's top priority. Soon after taking office, McGuffee met with plaintiff and the two other Local 225 members who were prosecuting the lawsuit. Plaintiff concedes that this meeting was amicable and that he later implored the membership to drop the suit. *See* Plaintiff's Response to Defendants' Statement of Material Facts at 27 & 28. The membership agreed to do so at a meeting held on August 20, 1984.

Plaintiff's claims in this case are closely linked to his election as a union business representative on June 7, 1982. Plaintiff had the lowest vote total of the three business representatives selected through that election; accordingly, pursuant to the un-

---

**1.** By order dated November 6, 1985, the Court granted Campbell's motion to dismiss under Rules 12(b)(2) & (5), Fed.R.Civ.P.

ion bylaws, plaintiff could not then take office because the membership was below 1,500.[2] Later, the business representative who had the second highest vote total retired; thus, during the trusteeship, plaintiff could have assumed his elected position if the membership exceeded 1,000. *See supra* at note 2. It is undisputed that the membership reached that level, although the parties dispute whether the increase resulted from McGuffee's decision to merge other locals into Local 225. Plaintiff made several requests to be placed on the payroll, but those requests were rebuffed, and, consequently, plaintiff brought this suit.

### III. *Discussion*

#### A) *The Summary Judgment Standard*

To prevail at summary judgment, the moving party must show that there are no genuine issues of material fact. *Thrasher v. State Farm Fire and Casualty Co.*, 734 F.2d 637, 638 (11th Cir.1984) (per curiam). The moving party may satisfy this burden by pointing out that there is nothing in the record to support the nonmoving party's case; if the moving party does so, it is incumbent upon the nonmoving party to present some evidence as to the relevant prima facie case. *Celotex Corp. v. Catrett*, — U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When reviewing the record, the Court must resolve all reasonable doubts in favor of the nonmoving party. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Williams v. City of Dothan*, 745 F.2d 1406 (11th Cir.1984). As *Celotex* teaches, how-ever, metaphysical doubt alone will not forestall summary judgment.

Summary judgment ... is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which ... 'secure the just, speedy and inexpensive determination of every action.'

106 S.Ct. at 2555 (quoting Rule 1, Fed.R. Civ.P.). Simply stated, summary judgment is designed to prevent fundamentally flawed cases from proceeding to trial. Because the critical inquiry is whether the record presents a jury issue, the case must be assessed in light of the "actual quantum and quality of proof necessary to support liability." *Anderson v. Liberty Lobby, Inc.*, — U.S. ——, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Barnes v. Southwest Forest Industries*, 814 F.2d 607 (11th Cir. 1987).

In this case, plaintiff has brought suit under two sections of the LMRDA—Title III and Title I. Plaintiff also asserts a state law claim. The Court will address these claims in turn.

#### B) *The LMRDA*

In analyzing a labor claim, a court must bear in mind the intent behind the relevant statutory scheme. The Supreme Court has emphasized this point:

We have cautioned against a literal reading of labor legislation; such legislation is often the product of conflict and compromise between strongly held and opposed views, and its proper construction frequently requires consideration of its wording against the background of its

---

**2.** The relevant bylaw provides as follows:
Section 25. (A) BUSINESS REPRESENTATIVES.
The Local Union shall elect three (3) Business Representatives whose salary and expense will be the responsibility of the Local Union. They shall be governed by the following formula:
1,500 members paying dues according to the Negotiated Agreement—three (3) Business Representatives
If the membership falls below 1,500 members paying dues according to the Negotiated Agreement, three consecutive months, the Business Representative receiving the lowest number of votes in the election in which he or she was elected, will be removed from office. If the membership falls below 1,000 members paying dues according to the Negotiated Agreement, the member receiving the next lowest number of votes in the election in which he or she was elected, will be removed from office.... When and if the membership increases or declines, each Business Representative removed or employed will be based on the past three (3) months membership of the 8th day of each month's report submitted to the International United Brotherhood of America.... A Business Representative may be removed as prescribed by the Constitution and Laws of the United Brotherhood.

legislative history and in light of the general objectives Congress sought to achieve. The LMRDA is no exception. *Wirtz v. Local 153, Glass Bottle Blowers Association,* 389 U.S. 463, 468, 88 S.Ct. 643, 646, 19 L.Ed.2d 705 (1968) (footnote and citation omitted).

The LMRDA reflects Congress' alarm at certain unions that bullied their memberships and thus destroyed union democracy. *See* S. Rep. No. 187, 86th Cong., 1st Sess., (1959), *reprinted in,* U.S. Code Cong. and Admin. News ("USCAN") 2318 (1959). Congress concluded that, to preserve democracy in union government, legislation was needed to protect both the rights of the membership as a whole and the rights of individual members. *See id.* At the same time, Congress recognized that extensive regulation would "undermine union self-government" and that, therefore, "only essential standards should be imposed...." *Id.* at 2323.

### 1) The Title III Claim

Title III of the LMRDA addresses the propriety of trusteeships imposed by labor unions on subordinate union groups. Congress concluded that

> [i]n general, [trusteeships] have been widely used ... to preserve the integrity and stability of the [union] organization itself. However, ... in some instances trusteeships have been used as a means of consolidating the power of corrupt union officers, plundering and dissipating the resources of local unions, and preventing the growth of competing political elements within the organization.

*Id.* at 2333. Following this view, Title III provides that trusteeships may be instituted only in accordance with a union's constitution and bylaws and only for valid purposes, including the following: (1) to correct corruption or financial malpractice; (2) to assure performance with collective bargaining agreements or other duties of a bargaining representative; (3) to restore democratic procedures; or (4) to fulfill other legitimate objectives of the union. 29 U.S.C. § 462.

As is true with the LMRDA as a whole, Title III balances a concern for fostering democracy with a deference for a union's right to self-government. *See generally Dolan v. Transport Workers Union,* 746 F.2d 733, 739–40 (11th Cir.1984). Specifically, because Congress was respectful of union officials' special competence to make "delicate judgments" regarding trusteeships, *see* S.Rep. No. 187, *supra,* USCAN at 2334, there is a strong presumption of validity where a trusteeship is instituted through proper procedural safeguards and where it has been in place no longer than eighteen months. 29 U.S.C. § 464(c); *see, e.g., Jolly v. Gorman,* 428 F.2d 960 (5th Cir.1970). During the eighteen month period, a presumptively valid trusteeship can be lifted only upon clear and convincing proof that it was established or has been maintained for an improper purpose. 29 U.S.C. § 464(c); *see, e.g., Benda v. Grand Lodge of International Association of Machinists & Aerospace Workers,* 584 F.2d 308, 316 (9th Cir. 1978). The presumption and burden of proof are reversed after the eighteen month period, since Congress concluded such a period would reasonably allow a trusteeship to accomplish its goal. S.Rep. No. 187, *supra,* USCAN at 2334–35.

Bearing in mind the policies behind Title III, the Court turns to defendants' arguments for summary judgment on plaintiff's Title III claims: (1) that plaintiff's claims are time-barred; and (2) that, even if the claims were timely, plaintiff could not rebut the statutory presumption of validity.

There is no period of limitations set forth in the LMRDA for Title III claims. In such situations, federal courts look first to analogous state statutes of limitations. *United Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–704, 86 S.Ct. 1107, 1111–1112, 16 L.Ed.2d 192 (1966). If there is no closely analogous state statute or the available state statute fails to account adequately for a federal policy, courts turn to related federal law. *Id.* In *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court departed from the general rule of *Hoosier.* There, as here, no statute of limitations was expressly applicable. Plaintiff, a union member, brought a hybrid action, suing his employer

for breach of an employment contract, 29 U.S.C. § 185, and his union for breach of the duty of fair representation. 29 U.S.C. § 158(b). The *DelCostello* Court applied the six-month limitations period the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), sets forth for unfair labor practices. Writing for the court, Justice Brennan noted that no analogous state statute existed and concluded that the six-month period balanced "the national interest in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective bargaining system." 462 U.S. at 171, 103 S.Ct. 2264 (quoting *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 70, 101 S.Ct. 1559, 1567, 67 L.Ed.2d 732 (1981) (Stewart J., concurring)).

Two recent Eleventh Circuit cases strongly suggest that *DelCostello* is controlling here, *Davis v. United Auto Workers,* 765 F.2d 1510 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1284, 89 L.Ed.2d 592 (1986), and *Erkins v. Bryan,* 785 F.2d 1538 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 455, 93 L.Ed.2d 402 (1986). In *Davis,* the Eleventh Circuit applied the six-month NLRA limitations period to a claim brought under Title I of the LMRDA. *Accord Vallone v. Local Union No. 705,* 755 F.2d 520 (7th Cir.1984); *Local Union 1397 v. United Steelworkers,* 748 F.2d 180 (3d Cir.1984); *Linder v. Berge,* 739 F.2d 686 (1st Cir.1984). The *Davis* Court observed that, as in *DelCostello,* there was no closely related state statute and also relied on the "family resemblance" between Title I claims and NLRA unfair labor practices claims: "both seek to 'protect ... individual workers from arbitrary actions by unions, which have been appointed the exclusive representatives ... in the workplace.'" *Davis,* 765 F.2d at 1514 (quoting *Local Union 1397,* 748 F.2d at 183). Based on this similarity, the court concluded that federal labor policy compelled it to apply the six-month limitations period. *Id.*

> In *DelCostello,* the Supreme Court found a strong connection between the national interest in labor peace and the necessity of a short period in which to bring an action based on a labor union's duty of fair representation.... We believe we are bound to find a similar connection between labor peace and an action based on a union's alleged mistreatment of its members by the denial of statutorily protected rights.

*Id.* (footnote omitted).

In *Erkins,* the Eleventh Circuit declined to apply the six-month NLRA limitations period to actions brought under § 501 of the LMRDA, 29 U.S.C. § 501. That section allows union members to recover funds misappropriated by a union officer or to seek an accounting of such funds. The *Erkins* Court distinguished *DelCostello* and *Davis* on the grounds that those cases involved claims against the employer or union as a whole, whereas plaintiff in *Erkins* sought only an accounting of funds allegedly misappropriated by individual defendants. Thus, unlike *DelCostello* and *Davis,* *Erkins* did not involve the stability of the union or the integrity of the collective bargaining process. Absent those concerns, there was no policy justification for imposing a brief limitations period.

In the Court's view, this case is closer to *DelCostello* and *Davis* than to *Erkins.* Regardless whether a trusteeship has been imposed rightly or wrongly, its existence signifies a crisis in union government. Even though an action challenging the trusteeship may be warranted, such an action can only exacerbate the crisis. It is also plain that this type of conflict affects the collective bargaining process. In addition, plaintiff has not suggested that there is a closely related state law from which to draw a limitations period. Therefore, the factors deemed most significant in *DelCostello* and *Davis* are present here.

Other factors also militate in favor of a short limitations period. As discussed above, *see supra* at 1517, Congress viewed trusteeship as an essential tool for restoring order to a troubled labor union and thus allowed only limited review of the decision to impose a trusteeship. Furthermore, as evidenced by the eighteen-month period controlling the statutory presumptions, 29 U.S.C. § 464(c), Congress regarded trusteeship as a short-term measure. In

light of these factors, the six-month limitations period appears most sensible. Allowing stale litigation of Title III claims would limit the efficacy, or at least the appeal, of the trusteeship option. To hamper union self-government in such a fashion would run counter to the overall purpose of the LMRDA. More important, where a trusteeship is improper, it should be challenged quickly. A long period of a wrongful trusteeship could permanently destroy the democratic spirit the LMRDA is designed to protect.

■ In sum, the Court will apply the six-month limitations period established by the NLRA. This period will allow union members sufficient time to determine whether a trusteeship should be challenged and will best serve the policies behind the LMRDA.[3] The Court will next consider whether plaintiff's Title III claims are timely.

■ Plaintiff advances two theories under Title III: (1) that the trusteeship was unlawfully established to stifle Local 225's lawsuit against the District Council; and (2) that the trusteeship was unlawfully established or maintained to block plaintiff from becoming a business representative. The first theory is time-barred. The trusteeship was instituted on August 2, 1984. As soon as McGuffee became trustee, he met with plaintiff to settle the suit, and these efforts were completed by August 20, 1984. If plaintiff had a cognizable claim under his first theory, he should have realized it by this point. Plaintiff, however, did not file suit until May 23, 1985—well beyond the six-month limitations period.

■ Plaintiff's second theory presents a closer question. Defendants argue that, as early as August 1984, McGuffee had informed plaintiff that he would not be placed on the payroll. McGuffee maintains that he repeated this statement several times over the next few months. Plaintiff's version of these conversations differs. According to plaintiff, McGuffee initially stated only that it was unlikely Campbell, president of the national union, would allow anyone else on the payroll, and it was not until December 1984 that plaintiff learned Campbell had made a final decision. There is support in the record for plaintiff's contention.[4] Therefore, viewing the facts in plaintiff's favor, the Court concludes that an issue of fact exists as to the timeliness of plaintiff's theory that the trusteeship was established or maintained to keep him off the payroll.

■ As noted above, defendants also argue that plaintiff's Title III claims fail as a matter of law under the clear and convincing evidence standard. That standard is applicable because plaintiff does not contest the procedures used in instituting the trusteeship.[5] 29 U.S.C. § 464(c). Under

---

3. Two points should be made regarding the basic fairness to union members of the six-month limitations period. First, the decision to invoke a trusteeship must be accompanied by procedural protections. *Jolly v. Gorman*, 428 F.2d 960 (5th Cir.1970). As a result, union members have a focused opportunity to decide whether the trusteeship is proper. Second, in Title III cases, the six-month period does not establish a single point by which a challenge to a trusteeship must be raised or else forever forfeited. This is true because 29 U.S.C. § 464 provides a cause of action for trusteeships that are "not established or maintained in good faith for a purpose allowable under [29 U.S.C. § 462]." Because the grounds for suit are phrased in the disjunctive, union members can bring suit for a wrongfully maintained trusteeship, even if they failed to bring suit earlier. Indeed, the statutory scheme favors claims brought when a trusteeship has lasted eighteen months or longer. *See* 29 U.S.C. § 464(c).

4. By letter dated February 9, 1985, plaintiff advanced his grievance to Campbell.

> Several times I talked with Bro. Ed McGuffee about ... going on the payroll, and he told me he did not think the General President would allow me to go on the payroll. He said if the President did allow me to go on the payroll, it would not be a problem....
> On December 6, 1984, I called Bro. Ed McGuffee, and requested that he call our General President and let him make the decision....
> On Dec[ember] 7, 1984, the next morning, Bro. Ed McGuffee ... informed me that the President would not allow me to hold office.

Defendants' Response to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Exhibit D).

5. Plaintiff maintains that his burden at trial is irrelevant to the motion for summary judgment. This used to be the law but is no longer. *Compare United States v. One (1) 1944 Steel Hull Freighter*, 697 F.2d 1030 (11th Cir.1983) *with Anderson v. Liberty Lobby, Inc.*, — U.S. —,

the clear and convincing evidence standard, plaintiff's first theory—that the trusteeship was instituted to quash Local 225's lawsuit—would fail even if it were not time-barred. The Court assumes, *arguendo*, that this would be a cognizable theory under Title III.[6] Still, the District Council was in disarray and severely in need of remedial measures. Plaintiff, in essence, concedes this much but maintains that the national union's overriding motivation was to stop the lawsuit. The trusteeship power, however, was neither needed nor used to settle the suit. Convinced that McGuffee would solve many of the existing problems, plaintiff and Local 225 dropped the suit volitionally. In light of that fact and the overwhelming evidence supporting the decision to impose the trusteeship, plaintiff's first theory does not present a triable issue: a reasonable juror could not find that clear and convincing evidence shows the trusteeship was imposed to stifle the lawsuit.

■■■■ Once again, plaintiff's second theory presents a more difficult problem.[7] It is true that, under the clear and convincing evidence standard, the evidence supporting the trusteeship decision also prevents plaintiff from reaching a jury on the

issue whether the trusteeship was *established* to keep him off the payroll.[8] On the other hand, a triable issue may exist as to whether the trusteeship was *maintained* to block plaintiff from assuming his elected position. Although it is unlikely that plaintiff could satisfy the clear and convincing evidence standard on that issue, the parties have not addressed the factors that influenced the national union to maintain trusteeship. Furthermore, the Court is somewhat troubled by the duration of the trusteeship—it ended on April 1, 1986, after being in place for twenty months.[9]

■■■■ In sum, the Court will grant defendants' motion as to the establishment of the trusteeship but will deny with leave to renew [10] the motion as to the maintenance of the trusteeship.[11]

### 2) The Title I Claim

■■■■ The key feature of Title I is the "Bill of Rights of Members of Labor Organizations." 29 U.S.C. §§ 411–415. Congress provided a right of action to redress violations of Title I rights, 29 U.S.C. § 412, and made it unlawful for a union to discipline its members for exercising any right protected by the LMRDA. 29 U.S.C. § 529. It is plain that 29 U.S.C.

---

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Barnes v. Southwest Forest Industries,* 814 F.2d 607 (11th Cir.1987). As discussed above, the current standard requires that, when deciding whether a triable issue exists, the Court must consider the standards that would control at trial.

**6.** Despite this assumption, the Court doubts that this theory is viable. It seems only reasonable for a national union to attempt to resolve a lawsuit between a local union and an intermediate union council. Where, as here, the national union does not coerce the local to drop the suit, it is difficult to conceive of a basis for liability. After all, the LMRDA is designed to prevent abuses of power. The Court sees absolutely no evidence of such abuse, at least with respect to McGuffee's efforts to settle Local 225's lawsuit.

**7.** It would indeed be unlawful to establish or maintain a trusteeship simply to prevent an elected union officer from taking office. *Cf. Schonfeld v. Raftery,* 271 F.Supp. 128 (S.D.N.Y.), *aff'd per curiam,* 381 F.2d 446 (2d Cir.1967).

**8.** That aspect of plaintiff's theory is further weakened by the fact that plaintiff was not even eligible for the position when the trusteeship

was established. According to plaintiff, he should "have gone on the payroll of Local # 225 [on] December 10, 1984" under the applicable formula. *See supra* at note 2. Plaintiff has not suggested that in August 1984, when the trusteeship commenced, defendants knew he would become eligible to assume his post.

**9.** It is worth noting again that the statutory presumption reverses at the end of eighteen months. *See* 29 U.S.C. § 464(c).

**10.** It may well be that conditions required that the trusteeship remain in place for an extended period. In this context, the Court notes that plaintiff's only articulated complaint about McGuffee's tenure is that he refused to place plaintiff on the payroll. The Court thinks it advisable to give defendants an opportunity to address reasons for the duration of the trusteeship.

**11.** Defendants also argue that the Title III claim is moot because the trusteeship has been lifted. Plaintiff can still seek damages, however. *See McDonald v. Oliver,* 525 F.2d 1217 (5th Cir.), *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976).

§§ 411(a)(2) and (4) protected plaintiff's activities in opposition to the District Council;[12] nonetheless, defendant argues that *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), bars any claim that, by keeping plaintiff off the payroll, McGuffee retaliated against plaintiff's exercise of protected rights.[13] The Court agrees as to § 529 but disagrees as to § 412.

■ *Finnegan* involved a newly-elected union president who, upon taking office, promptly fired several business agents linked to the prior administration. The union president defended his actions as traditional union patronage. According to this view, because the agents were loyal to the prior president, they could not be trusted to hew the line set by the new administration. The dismissed agents brought suit under § 529 and § 412.

The Supreme Court rejected both claims. As to § 529, the court held that removing a union officer or employee does not qualify as "discipline" under the LMRDA. The court based this conclusion on statutory language and legislative history suggesting that § 529 secures only an individual's rights as a union member, not his right to hold a position within the union. Accordingly, under *Finnegan,* a dismissed union official cannot state a § 529 claim unless, in addition to removing him, the union infringed upon his membership rights. *E.g., Sullivan v. Laborers International Union,* 707 F.2d 347, 350 (8th Cir.1983). Because the alleged retaliation here involved solely plaintiff's status as a union employee [14], his § 529 claim must be dismissed.

*Finnegan* also holds that a union member may state a claim under § 412 notwithstanding that the union's actions do not violate § 529. Nonetheless, the court concluded that the dismissed business agents' claim ran counter to the LMRDA's dual purpose—preserving union democracy and allowing unions leeway to manage their own affairs.[15]

---

12. Section 411(a)(2) provides as follows:

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

Section 411(a)(4) provides as follows:

No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

13. Defendant also argues that plaintiff's Title I claim is time-barred. As discussed above, *see supra* at 1518, *Davis v. United Auto Workers,* 765 F.2d 1510 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1284, 89 L.Ed.2d 592 (1986), holds that the NLRA's six-month statute of limitations controls Title I claims. For the purposes of the limitations period, plaintiff's Title I claim must be analyzed in the same fashion as his second theory under Title III. Both causes of action accrued when plaintiff was denied his position. Consequently, there is a dispute of fact as to whether the complaint is timely. *See supra* at 1519-20.

14. Plaintiff, in essence, concedes that his status as a union member was not impaired. *See* Defendants' Statement of Material Facts of Which There is No Genuine Issue to be Tried at 47–49; Plaintiff's Response to Defendants' Statement of Material Facts at 47–49.

15. Chief Justice Burger explained the court's conclusion as follows:

For whatever limits Title I places on a union's authority to utilize dismissal from union office as 'part of a purposeful and deliberate attempt ... to suppress dissent within the union,' *cf. Schonfeld v. Penza,* 477 F.2d 899, 904 (CA2 1973), it does not restrict the free-

■ *Finnegan* left open the question whether § 412 protects "nonpolicymaking and nonconfidential" employees from retaliatory discharges,[16] and plaintiff claims that he falls within this potential exception. *See* 456 U.S. at 441 n. 11, 102 S.Ct. at 1873 n. 11. But as a business agent plaintiff would have implemented union policy on many sensitive issues and would have had access to confidential information. Thus, plaintiff cannot be classified as a nonpolicymaking and nonconfidential employee. *See Rutledge v. Aluminum Brick and Clay Workers*, 737 F.2d 965, 967 (11th Cir.1984) ("Finnegan applies to union employees who are instrumental in implementing union policy, as well as those who formulate policy"); *Cotter v. Owens*, 589 F.Supp. 324, 328 (S.D.N.Y.1984), *aff'd in part and remanded in part on other grounds*, 753 F.2d 223 (2d Cir.1985) (setting forth the test for determining whether a discharged union employee comes within the exception to *Finnegan*).

■ This case, however, differs from *Finnegan* on other grounds. The dismissed business agents in *Finnegan*

were appointed employees; Pruitt complains of the denial of an elected position. In *Dolan*, the Eleventh Circuit faced a similar scenario and concluded that

> the fact that this case involves a conflict among elected officials rather than the operation of a patronage system ... suggest[s] a different approach ... than the one taken in *Finnegan*. In the latter case, the Supreme Court refused even to consider plaintiffs' claims ... because it found the practice of patronage ... inherently reasonable and consistent with democratic practices.... [T]here is nothing inherently reasonable or unreasonable about an elected board's ouster of one of its members. Thus, we cannot say that *Finnegan*'s broad stamp of approval for patronage appointments and dismissals should be extended to power struggles within the elected ranks of union management.

746 F.2d at 741–42. Under *Dolan*, the Court must inquire whether plaintiff's opposition to the District Council was "membership speech" or "officer speech," for only the former is protected under § 412.

---

dom of an elected union leader to choose a staff whose views are compatible with his own. Indeed, neither the language nor the legislative history of the Act suggests that it was intended even to address the issue of union patronage. To the contrary, the Act's overriding objective was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections. *See Wirtz v. Hotel Employees*, 391 U.S. 492, 497 [88 S.Ct. 1743, 1746, 20 L.Ed.2d 763] (1968). Far from being inconsistent with this purpose, the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election.

456 U.S. at 441, 102 S.Ct. at 1873 (footnotes omitted).

**16.** There is also some question as to whether *Finnegan* allows for a § 412 claim that a discharge was "part of a purposeful ... attempt to suppress dissent." 456 U.S. at 441, 102 S.Ct. at 1873 (quoting *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir. 1973)). *See Dolan v. Transport Workers Union*, 746 F.2d 733, 742 n. 17 (11th Cir.1984). In the Court's view, *Finnegan's* reference to *Schonfeld* relates only to the potential exception for nonpolicymaking and nonconfidential employees. This view is supported by the placement of the footnote regarding the

exception at the end of the sentence in which *Schonfeld* is quoted. *See* 456 U.S. at 441 n. 11, 102 S.Ct. at 1873 n. 11. The Court also agrees with Judge Sweet's well- reasoned conclusion on this point:

> [Plaintiff] contends that *Finnegan* ... left open the question whether a cognizable § 412 claim is presented by an allegation that a union discharged dissident officials as part of an overall plan to suppress dissent within the union.... The court rejects the interpretation proposed by plaintiff. The reference in ... *Finnegan* ... to the 'limits' on a union's authority to dismiss dissident employees refers only to the potential exception for nonpolicyholding and nonconfidential employees. It must be remembered that the *Finnegan* Court concluded that a union leader's ability to fulfill his election mandate would be hampered if he lacked the power to remove disloyal administrators. Therefore, an order directing a union to reinstate a dissident policymaking official would run counter to the rationale of *Finnegan*. Moreover, dissident union members may obtain relief from a scheme to suppress dissent even without the rule suggested by [plaintiff].

*Cotter v. Owens*, 589 F.Supp. 324, 328 n. 5 (S.D.N.Y.1984), *aff'd in part and remanded in part,* 753 F.2d 223 (2d Cir.1985); *but see Adams-Lundy v. Association of Professional Flight Attendants,* 731 F.2d 1154 (5th Cir.1984).

*Id.* at 742. That determination is simple: plaintiff did not hold a union position at the time he spoke out against the District Council. Therefore, the Court concludes that *Finnegan* does not bar plaintiff's claim under § 412.

The Court's conclusion may offer little comfort for plaintiff. During the relevant period, plaintiff's local was under a presumptively valid trusteeship. 29 U.S.C. § 464(c). To remove that trusteeship, plaintiff would have had to present clear and convincing evidence of impropriety. *Id.* Arguably, a less taxing standard should control a § 412 challenge to the individual decisions of a trustee. But, in the Court's view, applying a lower standard would be inconsistent with Congress' intent to insure that trusteeships remain a strong remedial measure. That Congress was reluctant to second-guess the decision to impose a trusteeship suggests that courts should be reluctant to second-guess the individual decisions of a trustee—at least where those decisions involve personnel matters. A trustee will undoubtedly be forced to make unpopular personnel moves. Tying his hands in that area would greatly hamper his ability to stabilize an already troubled local. Therefore, the Court concludes that plaintiff must prove his Title I claim by clear and convincing evidence. *Cf. Newman v. Local 1101, Communications Workers of America,* 570 F.2d 439 (2d Cir.1978). The parties have yet to address how plaintiff's claim fares under that standard.

Therefore, the Court will deny with leave to renew defendants' motion for summary judgment as to plaintiff's Title I claim.[17] Defendants may file a renewed motion focusing on whether a triable issue exists under the clear and convincing evidence standard.

### C) *The State Law Claim*

■ Plaintiff has asserted a state law claim for breach of an employment con-

tract. Recognizing that an "at-will" employee cannot sustain a wrongful discharge claim under Georgia law, *e.g., Georgia Power Co. v. Busbin,* 242 Ga. 612, 250 S.E.2d 442 (1978) (per curiam), plaintiff maintains that he enjoyed a fixed term of employment as a business representative. The Court concludes that the doctrine of preemption prevents it from reaching the merits of plaintiff's state law claim.

State law must yield when it is inconsistent with federal law or when it involves an area governed by pervasive federal regulation. *E.g., San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). A state law claim is ordinarily preempted if the conduct at issue is actually or arguably protected or prohibited by a federal statutory scheme. *Id.* at 245, 79 S.Ct. at 779; *see also Local 926, International Union of Operating Engineers v. Jones,* 460 U.S. 669, 676, 103 S.Ct. 1453, 1458, 75 L.Ed.2d 368 (1983). On the other hand, state law is not preempted when "the conduct at issue is only a peripheral concern" of federal law or involves an area of particular interest to local or state authorities. *Id.* at 676, 103 S.Ct. at 1458.

In the instant case, plaintiff has brought suit under the LMRDA, a comprehensive federal statute. Plaintiff challenges defendants' imposition of a trusteeship under Title III and defendants' alleged retaliation for the exercise of rights protected under Title I. Defendants' conduct in these matters is either protected or prohibited by the LMRDA. Accordingly, plaintiff's state law claim is preempted, and defendants are entitled to summary judgment on that claim.

### IV. *Conclusion*

The Court GRANTS IN PART and DENIES IN PART WITH LEAVE TO RENEW defendants' motion for summary judgment. If defendants elect to file a renewed motion, they must do so within

---

**17.** Defendants also argue that plaintiff's Title I claim must fail because his right to assume an elected position was contingent on Local 225's membership exceeding 1,000 and because the membership exceeded 1,000 only when McGuffee ordered the merger of several locals. The Court rejects this argument. As a preliminary matter, plaintiff has created an issue of fact as to whether the membership rise was solely a product of the merger. In addition, even if defendants' decision to merge the locals created plaintiff's right to take office, this would not entitle defendants to deny that right in a manner inconsistent with Title I.

fifteen days. Plaintiff shall have ten days thereafter in which to respond. A joint pretrial order shall be submitted within twenty days of the date of this order, or within twenty days of a ruling on a renewed motion for summary judgment, whichever is later.