REED *v.* UNITED TRANSPORTATION UNION ET AL.

No. 87–1031.   Argued November 2, 1988—Decided January 11, 1989

*John W. Gresham* argued the cause for petitioner. With him on the brief was *Jonathan Wallas*.

*Clinton J. Miller III* argued the cause and filed a brief for respondents.*

JUSTICE BRENNAN delivered the opinion of the Court.

We are called upon in this case to decide what statute of limitations governs a claim by a union member under § 101 (a)(2) of Title I of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), Pub. L. 86–257, 73 Stat. 522, 29 U. S. C. § 411(a)(2), alleging that the union violated its member's right to free speech as to union matters.[1] Congress enacted no statute of limitations expressly applicable to § 101 actions.

Petitioner Reed, the Secretary and Treasurer of Local 1715 (Local) of respondent United Transportation Union (Union), received reimbursement from the Local for "time

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Fried, Deputy Solicitor General Ayer, Glen D. Nager, George R. Salem, Allen H. Feldman, Mary-Helen Mautner,* and *Ellen L. Beard;* and for the Association for Union Democracy et al. by *Paul Alan Levy, Arthur L. Fox II,* and *Alan B. Morrison.*

*David Silberman* and *Laurence Gold* filed a brief for the American Federation of Labor and Congress of Industrial Organizations as *amicus curiae* urging affirmance.

[1] Section 101(a)(2) of the LMRDA provides:

"FREEDOM OF SPEECH AND ASSEMBLY.

"Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." 73 Stat. 522.

This section is enforceable by private right of action. 29 U. S. C. § 412.

lost" carrying out his union duties. After an audit the Union's president, respondent Hardin, disallowed these payments. Hardin ruled that petitioner was not entitled to the payments because he had failed to obtain approval for them prior to doing the tasks that caused him to lose time, and because his salary as an officer of the Local was intended to cover all his official duties. When petitioner subsequently attempted to enforce a policy that reimbursements required prior approval—denying unapproved claims by the president and other officers of the Local—Hardin overruled these decisions. Petitioner thereupon unsuccessfully sought reinstatement of his disallowed payment. In a series of letters to Hardin, the last dated August 2, 1983, petitioner alleged that more stringent standards had been applied to his reimbursement claims because he had been critical of the Local's president. Threatening suit, he asserted that the disallowance amounted to harassment for expressing his views on union matters and violated LMRDA § 101. Petitioner did not file this action in the Western District of North Carolina against the Union and various of its officers, however, until August 2, 1985.

Respondents moved for summary judgment, arguing that petitioner had filed his suit out of time. Respondents maintained that on the reasoning of *DelCostello* v. *Teamsters*, 462 U. S. 151 (1983), petitioner's § 101 claim should be governed by the statute of limitations that applies to the filing of charges with the National Labor Relations Board alleging unfair labor practices defined in § 8 of the National Labor Relations Act (NLRA), 29 U. S. C. § 158. Section 10(b) of the NLRA, 29 U. S. C. § 160(b), provides that such charges must be filed within six months.[2] The District Court denied summary judgment, holding that petitioner's action was more akin to a civil rights claim than an unfair labor practice

---

[2] Section 10(b) states in pertinent part that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board."

charge, and hence was governed by North Carolina's 3-year statute of limitations for personal injury actions in accordance with the rule this Court established in *Wilson* v. *Garcia*, 471 U. S. 261 (1985). 633 F. Supp. 1516 (1986).

The Court of Appeals for the Fourth Circuit reversed, construing *DelCostello* to require that petitioner's § 101(a)(2) claim be governed by NLRA § 10(b). 828 F. 2d 1066 (1987). We granted certiorari, 485 U. S. 933 (1988), to settle a conflict among Courts of Appeals as to the statute of limitations applicable to § 101(a)(2) actions.[3] We now reverse the Fourth Circuit's decision, and hold that § 101(a)(2) claims are governed by state general or residual personal injury statutes, which are to be identified in conformity with our decision this Term in *Owens* v. *Okure, ante,* p. 235.

I

Congress not infrequently fails to supply an express statute of limitations when it creates a federal cause of action. When that occurs, "[w]e have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law." *DelCostello, supra,* at 158. See, *e. g., Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.,* 483 U. S. 143, 147 (1987) (noting that the Rules of Decision Act usually requires that a state statute be borrowed, and also that "[g]iven our longstanding practice of borrowing state law, and the congressional aware-

---

[3] The Court of Appeals for the Fourth Circuit's holding conflicts with *Rodonich* v. *House Wreckers Union Local 95,* 817 F. 2d 967 (CA2 1987), and *Doty* v. *Sewall,* 784 F. 2d 1 (CA1 1986) (applying state personal injury limitations periods to Title I claims). It is in accord, however, with *Clift* v. *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America,* 818 F. 2d 623 (CA7 1987), cert. pending No. 87–42; *Davis* v. *United Automobile, Aerospace and Agriculture Implement Workers of America,* 765 F. 2d 1510 (CA11 1985), cert. denied, 475 U. S. 1057 (1986); and *Local Union 1397, United Steelworkers of America, AFL–CIO* v. *United Steelworkers of America, AFL–CIO,* 748 F. 2d 180 (CA3 1984) (applying § 10(b) statute of limitations).

ness of this practice, we can generally assume that Congress intends by its silence that we borrow state law"); *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696, 703–705 (1966); *Holmberg* v. *Armbrecht*, 327 U. S. 392, 395 (1946).

"State legislatures do not devise their limitations periods with national interests in mind," however, "and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Occidental Life Ins. Co. of California* v. *EEOC*, 432 U. S. 355, 367 (1977). Thus, on the assumption that Congress would not choose "to adopt state [limitations] rules at odds with the purpose or operation of federal substantive law," *DelCostello, supra,* at 161, we have recognized a closely circumscribed exception to the general rule that statutes of limitation are to be borrowed from state law. We decline to borrow a state statute of limitations only "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *DelCostello, supra,* at 172. See *Agency Holding Corp., supra* (adopting federal statute of limitations for civil RICO claims); *Occidental Life Ins. Co., supra* (federal limitations period applied to EEOC enforcement actions); *McAllister* v. *Magnolia Petroleum Co.*, 357 U. S. 221 (1958) (federal limitations period applied to unseaworthiness actions); *Holmberg* v. *Armbrecht, supra* (refusing to apply state statute to action to enforce federally created equitable right). This is a narrow exception to the general rule. As we made clear in *DelCostello*, "in labor law or elsewhere," application of a federal statute will be unusual, and "resort to state law remains the norm for borrowing of limitations periods." 462 U. S., at 171. Respondents urge in this case that petitioner's § 101(a)(2) claim that he was penalized for exercising his right as a union member to speak freely as to union matters falls within the narrow exception requiring

application of a federal statute of limitations, rather than within the general rule that we borrow an analogous state statute. We cannot agree.

## A

We have upon previous occasions considered the history of Title I of the LMRDA, and have concluded that "Congress modeled Title I after the Bill of Rights, and that the legislators intended § 101(a)(2) to restate a principal First Amendment value—the right to speak one's mind without fear of reprisal." *Steelworkers* v. *Sadlowski,* 457 U. S. 102, 111 (1982). Indeed, the amendments that eventually were enacted as Title I were introduced under the heading of "Bill of Rights of Members of Labor Organizations." See *Finnegan* v. *Leu,* 456 U. S. 431, 435 (1982). Congress considered the protection afforded by Title I to free speech and assembly in the union context necessary to bring an end to abuses by union leadership that had curtailed union democracy. It "adopted the freedom of speech and assembly provision in order to promote union democracy . . . [and] recognized that democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal." *Sadlowski, supra,* at 112. See also *Finnegan, supra,* at 436 (Title I was "necessary to further the [LMRDA's] primary objective of ensuring that unions would be democratically governed and responsive to the will of their memberships"). Thus the core purpose of § 101(a)(2) is to protect free speech and assembly rights because these are considered "vital to the independence of the membership and the effective and fair operation of the union as the representative." *Hall* v. *Cole,* 412 U. S. 1, 8 (1973).

As a preliminary matter, consideration of this core purpose suggests that "all claims arising out of [§ 101(a)(2)] 'should be characterized in the same way.'" *Agency Holding Corp., supra,* at 147, quoting *Wilson* v. *Garcia,* 471 U. S. 261, 268 (1985). Though § 101(a)(2) creates personal rights, a union

member vindicating those rights also serves public goals, in that he "necessarily render[s] a substantial service to his union as an institution and to all of its members," contributing to the improvement or preservation of democracy within the union. *Hall, supra*, at 8. Time-consuming litigation as to the collateral question of the appropriate statute of limitations for a § 101 claim would likely interfere with Congress' aim that actions to enforce free speech and association rights should in fact enhance union democracy. Such litigation creates uncertainty as to the time available for filing, and it would not be surprising if the prospect of perhaps prolonged litigation against the union before ever the merits are reached were to have a deterrent effect on would-be § 101(a)(2) plaintiffs. The diversion of resources to collateral statute-of-limitations litigation would be foreign to the central purposes of § 101(a)(2), and thus we are persuaded that all claims under that provision should be characterized in the same way. Determining exactly how they should be characterized does not appear to us to be a difficult task, given a proper understanding of the narrow scope of the *DelCostello* exception to our standard borrowing rule, and of the nature and purpose of § 101(a)(2).

Because § 101(a)(2) protects rights of free speech and assembly, and was patterned after the First Amendment, it is readily analogized for the purpose of borrowing a statute of limitations to state personal injury actions. We find it unnecessary to detail here the elements of this analogy. We have previously considered possible analogies between federal civil rights actions under 42 U. S. C. § 1983 (which lacks an express statute of limitations) and various state-law claims, and have held that § 1983 actions are governed by state general or residual personal injury statutes of limitations. *Owens* v. *Okure, ante,* p. 235; *Wilson* v. *Garcia, supra.* See also *Goodman* v. *Lukens Steel Co.,* 482 U. S. 656 (1987) (applying state personal injury statute to federal civil rights action against a private party brought under 42

U. S. C. § 1981). Since § 101(a)(2) has evident similarities to § 1983, which prohibits the infringement of First Amendment rights by persons acting under color of state law, it is apparent that § 101(a)(2) actions also are analogous to state personal injury claims, and under our usual borrowing rule would take their statutes of limitations. Moreover, these state personal injury statutes are of sufficient length, see *Owens*, *ante*, at 248, nn. 9 and 10, to accommodate the practical difficulties faced by § 101(a)(2) plaintiffs, which include identifying the injury, deciding in the first place to bring suit against and thereby antagonize union leadership, and finding an attorney. See *Doty* v. *Sewall*, 784 F. 2d 1, 9 (CA1 1986). As a result, no practicalities of litigation compel us to search beyond state law for a more analogous statute of limitations. Cf. *Agency Holding Corp.*, 483 U. S., at 147–148; *DelCostello*, 462 U. S., at 165–166, 167–168 (and see n. 4, *infra*); *Burnett* v. *Grattan*, 468 U. S. 42, 50–51 (1984). In light of the analogy between § 101(a)(2) and personal injury actions, and of the lack of any conflict between the practicalities of § 101(a)(2) litigation and state personal injury limitations periods, we are bound to borrow state personal injury statutes absent some compelling demonstration that "the federal policies at stake" in § 101(a)(2) actions make a federal limitations period "a significantly more appropriate vehicle for interstitial lawmaking." *DelCostello*, *supra*, at 172.

## B

Respondents argue that the same federal labor policies that led us in *DelCostello* to borrow the NLRA § 10(b) statute of limitations for hybrid § 301/fair representation claims likewise require that we borrow § 10(b) for LMRDA § 101 (a)(2) actions. This argument lacks merit. It fails to take seriously our admonition that analogous state statutes of limitations are to be used unless they frustrate or significantly interfere with federal policies. More importantly, it entirely ignores the core federal interest furthered by § 101(a)(2)—the

interest in union democracy promoted by free speech and assembly rights of union members — instead urging that we select a statute of limitations to serve federal policies that might merely be implicated by tangential and contingent effects of some § 101(a)(2) litigation.

We declined in *DelCostello* to apply state statutes of limitations for vacation of an arbitration award or for legal malpractice to an employee's hybrid § 301/fair representation action. Such hybrid suits formally comprise two causes of action. First, the employee alleges that the employer violated § 301 of the Labor Management Relations Act, 1947 (LMRA), 61 Stat. 156, 29 U. S. C. § 185, by breaching the collective-bargaining agreement. Second, the employee claims that the union breached its duty of fair representation, which this Court has implied from the scheme of the NLRA, by mishandling the ensuing grievance-and-arbitration proceedings. See *DelCostello*, *supra*, at 164, and n. 14. We held in *DelCostello* that, having regard to "the policies of federal labor law and the practicalities of hybrid § 301/fair representation litigation," 462 U. S., at 165, § 10(b) of the NLRA, with its 6-month limitations period for unfair labor practice charges, provided the closest analogy for hybrid § 301/fair representation actions.[4]

---

[4] The *practical* concerns that we held made state limitations periods unsuitable for hybrid § 301/fair representation claims are not implicated in LMRDA § 101(a)(2) actions. We reasoned in *DelCostello* that the suggestion that § 301/fair representation claims be governed by state limitations periods for actions to vacate an arbitration award suffered from "flaws . . . of practical application." *DelCostello* v. *Teamsters*, 462 U. S., at 165. These limitations periods, typically between 10 and 90 days, *id.*, at 166, n. 15, were too short "to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under § 301 and the fair representation doctrine," because in hybrid actions the employee "is called upon, within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the [grievance] proceeding, and to frame his suit." *Id.*, at 166. No such "flaws . . . of practical application" arise from the application of

Respondents argue, and the Court of Appeals held, that the § 10(b) 6-month limitations period must be applied to § 101(a)(2) actions in order to further the federal policy that calls for "'rapid resolution of internal union disputes'" in order "'to maintain . . . stable bargaining relationships.'" 828 F. 2d, at 1069, quoting *Local Union 1397, United Steelworkers of America, AFL–CIO* v. *United Steelworkers of America, AFL–CIO*, 748 F. 2d 180, 184 (CA3 1984). It is true that in *DelCostello* we held that use of a long malpractice statute of limitations for hybrid § 301/fair representation actions would conflict with the federal policy favoring "the relatively rapid final resolution of labor disputes." 462 U. S., at 168. The specific focus of our comparison between unfair labor practice charges governed by § 10(b) and hybrid § 301/fair representation claims was their effects upon the formation and operation of the collective-bargaining agreement between the employer and the bargaining representative, and upon the private settlement of disputes under that agreement through grievance-and-arbitration procedures.[5]

---

state general personal injury statutes of limitation to § 101(a)(2) suits, as noted in the text, *supra*, at 327.

An additional factor considered important to our analysis in *DelCostello* but absent here is that a hybrid § 301/fair representation action yokes together interdependent claims that could only very impractically be treated as governed by different statutes of limitations. 462 U. S., at 164–165. Cf. *McAllister* v. *Magnolia Petroleum Co.*, 357 U. S. 221 (1958) (applying a federal statute to seaworthiness actions under general admiralty law that are almost invariably brought in tandem with federal Jones Act claims). Departure from the normal practice of borrowing state statutes of limitations is more likely to be necessary where distinct actions are combined, making the possibility of finding a single analogous state statute more remote. See *DelCostello*, *supra*, at 166–167.

[5] Thus, in *DelCostello* we distinguished *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696 (1966), where we held that a straightforward § 301 suit by a union against management for breach of a collective-bargaining agreement, involving no agreement to submit disputes to arbitration, was governed by Indiana's 6-year limitations period for actions on an unwritten contract. The action at issue in *Hoosier* had not involved either the forma-

We noted that the § 10(b) period was "'attuned to . . . the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system.'" *Id.*, at 171, quoting *United Parcel Service, Inc.* v. *Mitchell*, 451 U. S. 56, 70 (1981) (Stewart, J., concurring in judgment). Those same interests, we held, are implicated by hybrid § 301/fair representation claims against union and employer, because such claims constitute a direct challenge to private dispute settlement under the collective-bargaining agreement. *DelCostello, supra*, at 165.

Insofar as interests in stable bargaining relationships and in private dispute resolution under collective-bargaining agreements are implicated by § 101(a)(2) claims, however, the relationship will generally be tangential and remote — as in the present case, which involves an internal union dispute not directly related in any way to collective bargaining or dispute settlement under a collective-bargaining agreement. To be sure, the Court of Appeals stated:

> "Internal union disputes, if allowed to fester, may erode the confidence of union members in their leaders and possibly cause a disaffection with the union, thus weakening the union and its ability to bargain for its members. Such prolonged disputes may also distract union officials from their sole purpose — representation of union members in their relations with their employer. These probable effects of protracted disputes may be destabilizing to labor-management relations." 828 F. 2d, at 1070.

See also *Local Union 1397, supra*, at 184 ("[D]issension within a union naturally affects that union's activities and effective-

tion of a collective-bargaining agreement or the private settlement of disputes under a collective-bargaining agreement, and had not called for application of a uniform federal statute of limitations. *DelCostello, supra*, at 162–163.

ness in the collective bargaining arena"). These observations have some plausibility. But they are not enough to persuade us that federal policy requires that § 10(b) govern claims under § 101(a)(2) of the LMRDA, for they establish no more than that § 101(a)(2) actions may sometimes have "some impact on economic relations between union and employer and on labor peace." Brief for Respondents 22. This is substantially less immediate and less significant an impact on bargaining and private dispute settlement than that which led us to apply the § 10(b) statute to hybrid § 301/fair representation claims, which directly challenge both the employer's adherence to the collective-bargaining agreement and the union's representation of the employee in grievance-and-arbitration procedures. As the Court of Appeals for the First Circuit noted in *Doty* v. *Sewall,* 784 F. 2d, at 7, a Title I suit does not directly

> "challeng[e] the 'stable relationship' between the employer and the union. It does not affect any interpretation or effect any reinterpretation of the collective bargaining agreement and so, unlike the hybrid actions, a Title I claim does not attack a compromise between labor and management. . . . There is no erosion of the finality of private settlements, for in the free standing LMRDA cases the union member is not attempting to attack any such settlement."

See also *Davis* v. *United Automobile, Aerospace and Agriculture Implement Workers of America,* 765 F. 2d 1510, 1514 (CA11 1985). Thus the federal interests in collective bargaining and in the resolution of disputes under collective-bargaining agreements, which require application of a 6-month statute of limitations to unfair labor practice charges and hybrid § 301/fair representation claims, simply are not directly involved in § 101(a)(2) actions.[6]

---

[6] One class of Title I actions may have a more direct effect on collective bargaining. Union members may attempt to challenge a collective-

There is another and more important reason why we cannot conclude in this case, as we did in *DelCostello*, that § 10(b) provides "a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here." 462 U. S., at 169. Section 101(a)(2) implements a federal policy—to guarantee free speech and association rights in order to further union democracy—that simply had no part in the design of a statute of limitations for unfair labor practice charges. Indeed, Title I of the LMRDA was a response to a perception that the NLRA, including the § 8(b) provisions defining unfair labor practices by labor organizations, had failed to provide the necessary protection for the free speech and other rights of union members that Congress considered essential to the democratic operation of unions. See, *e. g.*, *Steelworkers* v. *Sadlowski*, 457 U. S., at 102, 108–110. Hence while § 10(b) was "'attuned to . . . the . . . balance between national interests in stable bargaining relationships and finality of private settlements'" on the one hand, and "'an employee's interest in setting aside [a] settlement under the collective-bargaining system'" on the other, *DelCostello*, *supra*, at 171, quoting *Mitchell*, *supra*, at 70, the relevant balance in the case of

---

bargaining agreement by alleging that the union denied them the proper opportunity "to participate in the deliberations and voting" to ratify the agreement, in violation of LMRDA § 101(a)(1). See, *e. g.*, *Adkins* v. *International Union of Electrical, Radio & Machine Workers, AFL–CIO*, 769 F. 2d 330, 335 (CA6 1985); *Linder* v. *Berge*, 739 F. 2d 686, 690 (CA1 1984) (both applying the § 10(b) statute of limitations). We have no occasion in this case, which involves a § 101(a)(2) free speech claim, to decide what statute of limitations applies to other Title I actions. We note, nevertheless, that however direct an effect some Title I claims may have on the collective-bargaining agreement or on private dispute resolution, Title I claims all serve the core function of enhancing union democracy through enforcement of the rights of union members, *not* of protecting the integrity of collective bargaining or of grievance-and-arbitration procedures. See text *infra* this page and 333.

§ 101(a)(2) actions is quite different.   The second element in the § 10(b) balance is replaced in § 101(a)(2) cases by

"a union member's interest in protection against the infringement of his rights of free speech[, which] rises to a national interest, as embodied in section 101(a)(2) of the LMRDA, . . . and thus seems of greater importance than an employee's interest in setting aside an individual settlement under a collective bargaining agreement." *Davis, supra,* at 1514.

The 6-month § 10(b) statute of limitations was crafted to accommodate federal interests in stable bargaining relationships and in private dispute resolution that are not squarely implicated in LMRDA § 101(a)(2) actions; and it was not adopted with the distinct federal interest in the free speech of union members in mind.   Hence it is not the case that "the federal policies at stake" in § 101(a)(2) actions make the § 10(b) statute of limitations "a significantly more appropriate vehicle for interstitial lawmaking" than the analogous state statute of limitations that our established borrowing rule favors.[7]

---

[7] Respondents also argue that the § 10(b) statute of limitations should be applied to § 101(a)(2) claims because these bear a "family resemblance" to, and overlap with, unfair labor practices charges and claims that a union has breached its duty of fair representation.   Brief for Respondents 24–26. In support of borrowing § 10(b) for hybrid § 301/fair representation claims, we noted in *DelCostello* that "the family resemblance [between breaches of the duty of fair representation and unfair labor practices] is undeniable, and indeed there is a substantial overlap," because the NLRB treats breaches of the duty as unfair labor practices.   462 U. S., at 170.   Even were it the case, however, that Title I violations may constitute unfair labor practices and breaches of the duty of fair representation—questions we need not delve into today and upon which we express no opinion—we would still hold this resemblance inconclusive as regards the question whether § 101 actions should be governed by a state statute of limitations or by NLRA § 10(b).   In contrast to the situation in *DelCostello*, an overlap between Title I violations and unfair labor practices or breaches of the duty of fair representation would not be attributable to similar federal policies underlying each of these areas of protection, for the policies behind

## II

Because § 101(a)(2) of the LMRDA is modeled on the First Amendment to our Constitution, there is an analogy between § 101(a)(2) claims, § 1983 claims, and state personal injury actions. Indeed, we have already held that 42 U. S. C. § 1983, which like § 101(a)(2) protects the exercise of First Amendment rights, is governed by state general or residual personal injury statutes of limitations. *Owens* v. *Okure, ante,* p. 235. The well-established rule that statutes of limitations for federal causes of action not supplied with their own limitations periods will be borrowed from state law thus requires that state general or residual personal injury statutes be applied to § 101(a)(2) suits. None of the exceptions to that rule apply, for § 10(b) of the NLRA does not supply a more analogous statute; its 6-month limitations period is not better suited to the practicalities of § 101(a)(2) litigation; and it was not designed to accommodate federal policies similar to those implicated in § 101(a)(2) actions. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, concurring in the judgment.

I remain of the view that the Court should apply the appropriate state statute of limitations (if any at all) when a federal statute lacks an explicit limitations period. See *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.,* 483 U. S. 143, 170 (1987) (SCALIA, J., concurring in judgment). Accordingly, I concur in the judgment.

JUSTICE WHITE, dissenting.

I am persuaded that the 6-month statute of limitations prescribed by § 10(b) of the National Labor Relations Act, 29

Title I, on the one hand, and NLRA § 8(b) and the implied duty of fair representation on the other, are quite different. See *supra,* at 331.

U. S. C. § 160(b), should govern this action brought under § 101 of Title I of the Labor-Manangement Reporting and Disclosure Act of 1959, 29 U. S. C. § 411. Title I was part of a statute the purpose of which was to require that unions and employers adhere to high standards of responsibility and ethical conduct in order to protect employee rights to organize and bargain collectively. Title I was thus necessary to eliminate or prevent improper practices on the part of labor unions and employers that "distort and defeat" the policies of the labor laws. §§ 401(a)–(c). It is not readily apparent to me that Congress was simply moving to enforce the First Amendment rather than to ensure that unions were truly and effectively the representatives of their members for the purpose of collective bargaining. I therefore do not think that the 42 U. S. C. § 1983 rule furnishes a closer analogy than does § 10(b); neither does it serve the policies of the labor laws nor further the interests of consistency and repose that are involved in the early settlement of disputes between unions and their members.

Undeniably, Congress made it an unfair labor practice for a union to restrain or coerce employees in the exercise of their organizational and collective-bargaining rights, 29 U. S. C. § 158(a), thus seeking to protect the same interests furthered by Title I, yet insisting that such charges be aired and decided in prompt fashion. Furthermore, there can be no doubt that a great many alleged violations of Title I could be filed with the Board as unfair labor practices subject to the 6-month limitations period of § 10(b). I find nothing of real substance in the Court's opinion to justify borrowing the much longer state statute that was not designed with the interests of the federal labor laws in mind.

Respectfully, I dissent.