893 F.2d 1216
 133 L.R.R.M. (BNA) 2578, 114 Lab.Cas. P 11,901
 J.W. PRUITT, Jr., Plaintiff-Appellant,
v.
CARPENTERS' LOCAL UNION NO. 225 OF the UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA, Defendant-Appellee.
J.W. PRUITT, Jr., Plaintiff-Appellant,
v.
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA,
Edward L. McGuffee, in his representative capacity, and
Carpenters' Local Union No. 225 of the United Brotherhood of
Carpenters and Joiners of America, Defendants-Appellees.
 Nos. 88-8548, 88-8642.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 6, 1990.
 
 Richard G. Greer, Donald J. Sharp, Greer, Klosik & Dougherty, Atlanta, Ga., for plaintiff-appellant, J.W. Pruitt.
 
 
 1
 James T. Langford, Jacobs and Langford, P.A., Atlanta, Ga., for defendant-appellee, Carpenters Local Union No. 225.
 
 
 2
 Edward J. Gorman, III, United Broth. of Carpenters, Washington, D.C., for defendants-appellees, United Broth. of Carpenters and Joiners, et al.
 
 
 3
 Appeals from the United States District Court for the Northern District of Georgia.
 
 
 4
 Before VANCE* and ANDERSON, Circuit Judges, and ATKINS**, Senior District Judge.
 
 ATKINS, Senior District Judge:
 
 5
 These two actions were brought by a union member for violation of Title I of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. Sec. 401 et seq. ("Pruitt I "), and for fraud and wrongful refusal to instate ("Pruitt II "). The district court in each case granted summary judgment in favor of the appellees, and the appellant appealed. For the reasons set forth below, we now affirm the ruling in Pruitt I and vacate the ruling in Pruitt II, 659 F.Supp. 1511, and remand that case for further proceedings consistent with this opinion.
 
 I.
 
 6
 Facts and Background Information.
 
 
 7
 The appellant's claims arose out of a 1982 union election. In that election, the appellant was selected as a union business representative of Local 225 of the United Brotherhood of Carpenters and Joiners of America (the "UBC"). The appellant, however, received the lowest vote total of the three business representatives selected. Union bylaws provided that the candidate who amassed the lowest vote-total in such situations could not assume office until the union membership level exceeded 1,500. Accordingly, the appellant was forced to wait.
 
 
 8
 During this time, labor relations worsened between the appellant's local and the Atlanta and Vicinity District Council of Carpenters (the "District Council"), an intermediate labor organization of the UBC. Relations reached a nadir when, in September, 1983, Local 225 sued the District Council. To alleviate the tension between Local 225 and the District Council, the UBC intervened. In 1984, a three-member panel of the UBC executive board recommended that Local 225 and the District Council be placed under the supervision of a trustee. The UBC adopted these recommendations and, on August 2, 1984, appellee McGuffee was appointed trustee of the entire District Council.
 
 
 9
 Upon assuming his duties, the trustee promptly suspended the autonomy of both unions and eliminated the bylaws which had created the business representative post. Imposition of the trusteeship thus eliminated the post to which the appellant sought instatement. The appellant certainly knew about these developments, see Order, Pruitt v. United Brotherhood of Carpenters and Joiners of America, et al., 1:85-CV-3036-MHS, at 5 (N.D.Ga. Aug. 1, 1988) (noting that trustee advises Local 225 members of bylaw suspension), but he nevertheless continued to apply for instatement. His application was treated to a final rejection in December, 1984.
 
 
 10
 Battle was joined the following year. In May, 1985, the appellant filed suit against the UBC, McGuffee, and Local 255, charging violations of the LMRDA and state law ("Pruitt I "). In 1986, the appellant filed a second suit ("Pruitt II ") in state court against Local 225. In that suit, the appellant alleged, first, that the union had fraudulently misrepresented the size of its membership, and second, that the union "fraudulently and maliciously" refused to instate him to the business representative position. After Pruitt II was removed to federal district court, the appellees in both cases moved for summary judgment. The Pruitt I motion was granted when the district court recognized that the post to which the appellant sought instatement no longer existed. The Pruitt II motion was granted on the ground that the applicable limitations period expired before the suit was commenced. These appeals followed.
 
 II.
 
 11
 Discussion.
 
 
 12
 A. Removal Jurisdiction.
 
 
 13
 The appellant first argues that the district court lacked subject matter jurisdiction to adjudicate this dispute.[1] The appellant originally filed this case in the Superior Court of Georgia. From there, the appellee removed the case to federal district court pursuant to 28 U.S.C. Sec. 1441(b). The appellant now argues that his complaint, which sought relief under state law, did not raise federal questions sufficient to support the exercise of federal jurisdiction. He therefore concludes that the district court erred when it refused to remand the case to state court after it was removed. The question, then, is whether the district court in this case properly exercised removal jurisdiction.
 
 
 14
 In general, 28 U.S.C. Sec. 1441(b) permits a defendant to remove to federal court any civil action "founded on a claim or right arising under the ... laws of the United States." There are two ways in which a case may, for removal purposes, "arise under" federal law. First, the plaintiff's well-pleaded complaint simply may raise issues of federal law. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (describing "well-pleaded complaint" rule delineated in Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). Second, and more important for present purposes, the complaint may raise a select type of claim that has been singled out by Congress for federal preemption. See Metropolitan Life, 481 U.S. at 63-64, 107 S.Ct. at 1546-47 (noting that "Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character"). Accordingly, this court must determine whether, pursuant to either theory, the appellant's cause of action "arises under" federal law.
 
 
 15
 Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a), preempts equivalent remedies afforded by state law. This conclusion derives from the Supreme Court's firm mandate that:the preemptive force of Sec. 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts....' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of Sec. 301.
 
 
 16
 Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853-54, 77 L.Ed.2d 420 (1983); see also Metropolitan Life, 481 U.S. at 64, 107 S.Ct. at 1546 ("For 20 years, this Court has singled out claims pre-empted by Sec. 301 ... for such special treatment"). The final step of the removal analysis, then, is to determine whether the appellant's cause of action seeks relief under state laws that have been preempted by section 301.
 
 
 17
 The court believes that the appellant's cause of action is completely preempted. By its terms, section 301 provides that "[s]uits for violations of contracts between an employer an a labor organization ... or between any such labor organization may be brought in the district court of the United States." The term "contracts" includes union constitutions, see United Association of Journeymen & Apprentices v. Local 334, 452 U.S. 615, 619-20, 101 S.Ct. 2546, 2548-49, 69 L.Ed.2d 280 (1981), and the phrase "[s]uits for violations of contracts" includes suits by employees for violations of union constitutions. See, e.g., Alexander v. International Union of Operating Engineers, 624 F.2d 1235 (5th Cir.1980) (employees sue union under section 301 when union enters into unwanted agreement); cf. Franchise Tax Board, 463 U.S. at 25 n. 28, 103 S.Ct. at 2854 n. 28 (Court "ha[s] not taken a restrictive view of who may sue under Sec. 301 for violations of such contracts") (emphasis original).[2] In the present case, the complaint essentially asserts that the union breached its bylaws and its constitution when it fraudulently refused to instate the appellant. The complaint thus created a "suit for violation[ ] of contract[ ]" within the meaning of section 301, and the appellant's cause of action was preempted by federal law. The case was, therefore, properly removed to federal district court pursuant to 28 U.S.C. Sec. 1441(b).
 
 
 18
 B. Selection of Limitations Period.
 
 
 19
 The appellant next argues that the district court erred when it held that his claims were governed by the six-month limitations period prescribed by section 10(b) of the National Labor Relations Act (NLRA), as amended, 29 U.S.C. Sec. 160(b). Specifically, the appellant asserts that his claims, which sound in tort and breach of contract, are governed by the lengthy limitations period prescribed by state law. See O.C.G.A. Secs. 9-3-32, 9-3-24 (four and six-year periods for fraud and breach of contract, respectively). This court must, therefore, determine whether the appellant's claims are governed by section 10(b)'s six-month period or by a longer period derived from state law.
 
 
 20
 Congress not infrequently fails to furnish an express statute of limitations in connection with a federal cause of action. In such instances, the federal courts must, as a general rule, "borrow" a limitations period from the most closely analogous state law cause of action. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983); see also United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 703-04, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1968) (Court endorses "borrowing" scheme and applies state law limitations period governing breach of collective bargaining agreements). There exists a "closely circumscribed" exception to this general rule. Reed v. United Transportation Union, --- U.S. ----, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). Where state law furnishes only "unsatisfactory vehicles for the enforcement of federal law," DelCostello, 462 U.S. at 161, 103 S.Ct. at 2289, the court may borrow a limitations period from federal law if: (1) a rule from elsewhere in federal law "clearly provides a closer analogy than available state statutes," and (2) "the federal policies at stake and the practicalities of litigation make that [federal] rule a significantly more appropriate vehicle for interstitial lawmaking." Id. at 172, 103 S.Ct. at 2294.
 
 
 21
 The Supreme Court has, however, recently emphasized the narrowness of this exception. In Reed, an employee alleged that his union violated his right to free speech under Sec. 101(a)(2) of Title I of the LMRDA. The suit was not filed until two years after the last complained-of event had occurred. Citing to DelCostello, the Fourth Circuit Court of Appeals analogized the suit to an unfair labor practice and held that the suit was time-barred by section 10(b)'s six-month limitations period. The employee appealed, arguing that the court should have applied the three year limitations period which, under state law, governed personal injury actions.
 
 
 22
 The Supreme Court agreed with the employee. To support this decision, the Court stated, first, that the employee's Sec. 101 action found a closer analogy in state personal injury law than in federal labor law. Reed, 109 S.Ct. at 626-27. Turning next to the "practicality/policy" prong of the DelCostello exception, the Court stated that the case before it raised none of the practical problems that had been raised in DelCostello. The problem in DelCostello (the Reed Court explained) lay in the 10-90-day periods that governed state suits to vacate arbitration awards: the typical labor plaintiff could hardly be expected, within such a short time, to identify his or her injury, retain counsel, and file a complaint. Reed, 109 S.Ct. at 627-28 n. 4 (explaining practical problems encountered in DelCostello). Along these same lines, the Court stated that practical problems would most likely arise "where distinct forms of action are combined, making the possibility of finding a single analogous state statute more remote." Id. (emphasis added).[3]
 
 
 23
 Finally, the Reed Court stated that intra-union disputes often fail to implicate sufficiently the national policy concerns balanced by section 10(b)'s six-month period. In reaching this conclusion, the Court admitted that Reed's suit created a certain degree of intra-union dissension, thereby impeding union effectiveness in the bargaining arena. Id. at 628-29 (discussing argument advanced in Local Union 1397 v. United Steelworkers of America, 748 F.2d 180, 184 (3d Cir.1984)). But the Court went on to state:
 
 
 24
 Insofar as [the national policy] interests in stable bargaining relationships and in private dispute resolution under the collective bargaining agreements are implicated by Sec. 101(a)(2) claims, ... the relationship will generally be tangential and remote--as in the present case which involves an internal union dispute not related in any way to collective bargaining or dispute resolution under a collective bargaining agreement.
 
 
 25
 Id. at 628-29 (emphasis added); accord Grasty v. Amalgamated Cloth. & Textile Workers Union, 828 F.2d 123, 132-33 (3d Cir.1987) (state law limitations period governs intra-union claims based on improper union activity; such claims have "little or no relation to the day-to-day relationship between the union and its members...."); Davis v. United Auto Workers, 765 F.2d 1510, 1514 (11th Cir.1985) (court notes, in dicta, that intra-union Sec. 101 dispute does not seriously implicate the national labor policies of stable bargaining relationships and prompt dispute resolution).[4] Accordingly, the Reed Court concluded that the DelCostello exception did not apply and that Reed's claims should have been governed by the limitations period prescribed by state law.
 
 
 26
 Applying these principles to the facts of the present case, we conclude that the appellant's suit does not meet the requirements of DelCostello's "practicality/policy" prong. First, the present case does not raise any of the practical problems encountered in DelCostello. The state limitations period for fraud actions afforded the appellant ample time to investigate the perceived wrongdoing and retain counsel. Moreover, this case does not combine distinct forms of action into a single "hybrid" suit--the appellant sues only his union, not his union and his employer.
 
 
 27
 Second, the appellant's suit fails to implicate sufficiently national policy considerations. The appellant has not brought a hybrid suit; he has not attacked the validity of a collective bargaining agreement; and he has not intermeddled with a settled arbitration award. Rather, the appellant's intra-union suit alleges merely that the union tricked him when it misrepresented the size of its membership. Such a limited challenge cannot, after Reed, seriously be construed as a threat to stable bargaining relationships or to the integrity of the private dispute resolution process. Accordingly, we conclude that Pruitt's suit bears only peripherally on important national policy considerations. See Davis, 765 F.2d at 1510 (court deems "tenuous" the link between an intra-union dispute and union's ability to provide effective, federally-mandated representation); cf. Monarch Long Beach Corp. v. Soft Drink Workers, Local 812, 762 F.2d 228, 231 (2d Cir.1985), cited with approval in Prater v. United Mine Workers, 793 F.2d 1201, 1209 (11th Cir.1986) (third-party suit charging union with unlawful secondary boycott "do[es] not implicate the same concerns [as hybrid Sec. 301 suits]"--former suit does not disrupt labor peace, involve collective bargaining dispute, or arise within context of labor-management relationship).
 
 
 28
 Having concluded that Pruitt II does not meet the requirements of the "practicality/policy" prong, we need not determine whether, pursuant to the first prong, a rule from elsewhere in federal law "clearly provides a closer analogy than available state statutes." DelCostello, 462 U.S. at 172, 103 S.Ct. at 2294 (two-part test). We therefore hold that the district court erred when it failed to apply to the appellant's claims the four-year limitations period prescribed for Georgia fraud actions.
 
 III.
 
 29
 Conclusion.
 
 
 30
 In light of the foregoing, we AFFIRM the rulings of the district court in Pruitt I. We VACATE the rulings of the district court in Pruitt II and REMAND that case for further proceedings consistent with this opinion.
 
 
 
 *
 Judge ROBERT S. VANCE was a member of the panel which heard oral argument, but due to his death on December 16, 1989, did not participate in this decision. This case is decided by a quorum. See 28 U.S.C. Sec. 46(d)
 
 
 **
 Honorable C. CLYDE ATKINS, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 We affirm without opinion the district court's ruling in Pruitt I, see 11th Cir.R. 36-1(d), and proceed directly to the issues raised in Pruitt II
 
 
 [2]
 Contrary to this court's earlier ruling in Alexander, 624 F.2d at 1238, a party seeking to invoke federal jurisdiction need not demonstrate that the alleged violation of the union constitution has a "significant impact" on labor-management relations. See United Association of Journeymen, 452 U.S. at 624-25, 101 S.Ct. at 2551-52 (Court perceives no justification for "significant impact" requirement); see also Kinney v. International Brotherhood of Elec. Workers, 669 F.2d 1222, 1229 (9th Cir.1981) (same)
 
 
 [3]
 Suits that combine "distinct forms of action" are generally deemed "hybrid." See Reed, 109 S.Ct. at 627 (describing essential characteristics of "hybrid" suits)
 
 
 [4]
 The Reed Court cited this dicta with approval, Reed, 109 S.Ct. at 629, although the Court ultimately rejected Davis's holding. Id. at 625 n. 3