OPINION
BERNICE BOUIE DONALD, Circuit Judge.
Plaintiff unions sued employer Coca-Cola for breach of their collective bargain *709 ing agreement, claiming that Coca-Cola failed to fulfill its obligation to implement certain wage increases on the agreed-upon dates. The parties filed cross-motions for summary judgment, offering competing interpretations of the collective bargaining agreement. Coca-Cola also moved for summary judgment on grounds that the unions’ action was time-barred. The district court granted summary judgment in favor of the unions, and Coca-Cola appeals the judgment. For the following reasons, we AFFIRM the judgment of the district court.
I.
Plaintiffs, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union, AFL-CIO-CLC (“USW”) and its local union affiliate, Local 2-2000, were parties to a collective bargaining agreement (“CBA”) with Defendant Coca-Cola that governed Coca-Cola’s Paw Paw, Michigan facility from March 25, 2006 to September 30, 2009. In September 2009, the parties engaged in extensive negotiations over an agreement to replace the 2006 CBA. The negotiations resulted in an agreement to the following wage increases:
Year 1: 0% increase
Year 2: 2% increase
Year 3: 3% increase
The specific effective dates for these increases were not discussed in the negotiations.
This agreement was documented in a Tentative Settlement Agreement (“TA”) by an officer of Coca-Cola on September 28, 2009. The TA provided for an agreement duration from October 1, 2009 through September 30, 2012, with all terms of the prior CBA to remain in effect “except as modified herein.” The TA further provided for three increases in fringe benefits, effective May 2, 2010; May 1, 2011; and May 6, 2012. The TA also provided for two Retirement Plan increases, effective March 25, 2010 and March 25, 2011, and three “sick and accident insurance” increases, effective April 1, 2010; April 1, 2011; and April 1, 2012.
The TA was signed by Coca-Cola and union officials the same day, signifying that a deal had been reached subject to ratification by the local union’s membership. Coca-Cola’s labor relations manager prepared a red-lined document for the local union, highlighting the changes from the prior CBA. This document had an Appendix A, which provided the graduated rate increases as follows:
Year 1: 0% increase
Year 2: 2.0% increase
Year 3: 3.0% increase
Appendix A did not specify the effective dates or wage rates. The local union membership reviewed the red-lined document and voted to ratify the agreement on September 30, 2009. Coca-Cola then presented a draft based on the red-lined document to the local union for proofreading. The union returned the draft to the company with very minor corrections.
At some point after the effective date of the agreement, Coca-Cola prepared a chart titled “Appendix A” which listed March 21, 2010; March 20, 2011; and March 25, 2012 as the effective dates for the agreed-upon wage increases, to align with the March wage increase dates in the previous CBA.
Local union negotiators signed signature pages supplied by the company with the understanding that Coca-Cola would attach them to the corrected final CBA draft. Coca-Cola appended the various signature pages to a corrected draft and forwarded this to the parent union for signature. The parent union representative, after a cursory review and with the assumption that the local union had thor *710 oughly proofread the final draft, obtained the necessary signatures.
Coca-Cola had the executed agreement printed in booklet form, and the local union distributed that booklet to its employees on July 17, 2010, over six months after the effective date of the agreement. It was greeted with “immediate protests” in response to the inclusion of the modified “Appendix A.” The local union president emailed the plant general manager, indicating that a “mistake has been found ... in Appendix A which has to do with our wage increase.” Coca-Cola proceeded with the wage increases according to the Appendix A it had drafted, and declined to arbitrate the matter.
The local union filed suit for breach of contract on March 23, 2011, and the parent union joined in the amended complaint filed January 3, 2012. The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of the unions. Coca-Cola timely filed the present appeal.
II.
The amended complaint’s sole cause of action against Coca-Cola is breach of the CBA. The district court had jurisdiction under § 301 of the Labor Management Relations Act (LMRA), which grants federal court jurisdiction over “[sjuits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.” 29 U.S.C. § 185(a). Coca-Cola argues both that the unions’ action was time-barred and that the district court erred when it reformed the wage increases provision of the agreement under the doctrine of mutual mistake of fact to grant summary judgment to the unions. We address these arguments in turn, applying a de novo standard of review. Dye v. Office of the Racing Comm’n, 702 F.3d 286, 294 (6th Cir.2012) (‘We review de novo a district court’s grant of summary judgment.”).
A.
Because the LMRA does not set a specific limitations period, federal courts must apply the most closely analogous state statute of limitations. Int’l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp., 383 U.S. 696, 703-04, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Coca-Cola argues that the six-month limitation period contained in § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), applies to this case because, while presented as a LMRA-based “breach of contract” action, the claim is actually more analogous to an unfair labor practice claim.
The company asserts that, because the unions became aware of the contractual dispute at issue in July 2010 but only filed suit in March 2011, their claims are outside of the six-month limitations period and are therefore time-barred. Coca Cola asserts that the local union’s filing of an unfair labor practice charge based on the same subject matter as the amended complaint amounts to a concession that § 10(b) of the NLRA applies.
The unions counter that their suit was timely filed within Michigan’s six-year limitations period for contract actions applicable to LMRA § 301 actions to recover wages under the terms of a CBA. The unions emphasize that the parties agree that the controversy before the court is a matter of contract interpretation as to whether Coca-Cola discharged its duties under the 2009 CBA. The unions point out that many, if not most, unilateral failures to meet CBA obligations result in both an unfair labor practice charge before the *711 National Labor Relations Board and a breach of contract suit in district court. Finally, the unions argue that even if the NLRA six-month statute of limitations were applied here, their action is not time-barred.
For support of its statute of limitations argument, Coca-Cola relies primarily upon Cummings v. John Morrell & Co., 36 F.3d 499 (6th Cir.1994), whereas the unions look to the holdings in UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), and Central States Southeast & Southwest Areas Pension Fund v. Kraftco, Inc., 799 F.2d 1098 (6th Cir.1986) (en banc). We will look to Cummings — which analyzed both Kraftco and Hoosier — for guidance in determining whether to apply the six-month limitations period set forth in § 10(b) of the NLRA or Michigan’s six-year statute of limitations for breach of contract actions.
The Cummings court acknowledged Supreme Court precedent from DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), establishing that “hybrid” suits combining § 301 and fair representation claims are subject to the abbreviated limitations period of § 10(b) “since it would be impractical to apply different statutes of limitations to different elements of a single cause of action.”[1] 36 F.3d at 503-04 (citing DelCostello, 462 U.S. at 170-71, 103 S.Ct. 2281). The hybrid characteristic distinguished this line of cases from the earlier Hoosier decision which applied the state statute of limitations. Id. at 502. Because the gravamen of the complaint was “essentially an action for damages caused by an alleged breach on an employer’s obligation embodied in a collective bargaining agreement,” the Hoosier court applied the applicable state statute of limitations for breach of contract. 383 U.S. at 696, 705 n. 7, 86 S.Ct. 1107.
Although DelCostello held that hybrid complaints are subject to the NLRA limitations period, it made clear that application of a federal statute of limitations will only be appropriate in unusual cases, and “resort[ing] to state law remains the norm for borrowing of limitations periods.” 462 U.S. at 171, 103 S.Ct. 2281. The Supreme Court underscored this point several years later in Reed v. United Transportation Union, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), when it called DelCostello a “closely circumscribed exception” to “the general rule that statutes of limitation are to be borrowed from state law.” Id. at 324, 109 S.Ct. 621.
Cummings also examined our en banc decision in Kraftco, in which a union-sponsored pension fund sued an employer under the LMRA, alleging that the employer violated the terms of a CBA by failing to make required payments into the pension fund. 36 F.3d at 505. Although the employer attempted to portray the claim as substantially similar to an unfair labor practices claim, we held that it was closer to a breach of contract action: “[T]he issues in Kraftco boiled down to what the contract said and whether the employer discharged its duties under it.” Id. (citing Kraftco, 799 F.2d at 1108). The court, therefore, held that the state statute of limitations should be applied. Id.
Finally, Cummings examined two non-hybrid cases where we invoked the “closely circumscribed exception” of DelCostello to hold that the § 10(b) limitations period applied to claims brought under the *712 LMRA. In McCreedy v. Local 971, UAW, 809 F.2d 1232 (6th Cir.1987), involving an action seeking to compel an employer to submit to arbitration, we held that “an action to compel arbitration is not readily analogous to a traditional breach of contract suit where damages are sought.” Id. at 1238. Such an action, which “seeks only to enforce the grievance and arbitration procedures” under the CBA is, like an employee’s unfair representation claim, “a creature of labor law.” Id. The second case, Woosley v. Avco Corp., 944 F.2d 313 (6th Cir.1991), addressed the claims of individual employees to entitlement to a particular job under a CBA; we applied the § 10(b) time period because the case involved “day-to-day employment and grievance issues” and “collective bargaining processes [that] might be disturbed.” Id. at 318.
Armed with this wealth of case law, the Cummings court applied a three-element test adapted from the Supreme Court’s decision in DelCostello, looking at (1) whether federal law clearly provides a closer analogy than available state statutes, (2) whether the importation of state law would frustrate or interfere with the implementation of national policies, and (3) the “practicalities of litigation.” Cummings, 36 F.3d at 506. The court found that the union’s claim bore a “strong family resemblance” to an unfair labor practice charge because the union filed such a charge with the NLRB concerning the same employer conduct at issue in the complaint. Id. The court further found that, because the claim rested on the conduct of collective bargaining between the parties and federal law favors collective bargaining, application of the state statutes would frustrate or interfere with federal policies. Id. The court also emphasized that, under our precedents, application of the § 10(b) statute of limitations is appropriate where a § 301 suit relates to entitlement to employment. Id. at 507. Finally, because the union was a sophisticated claimant, it would work “no unfairness against such a party to impose a six-month time limit.” Id. Consequently, the court concluded that the practicalities of litigation did not favor the use of a longer state limitations period. Id.
Coca-Cola argues that, like Cummings, the union in this case filed an unfair labor practices complaint with the NLRB regarding the same subject matter, and this case, like Cummings, rests in large part “on the conduct of collective bargaining between the parties.” Id. at 506. These similarities are superficial, however, in contrast to what matters most: the nature of the claim and whether it is more closely analogous to a state law breach of contract or a federal labor law claim.
The unions’ amended complaint does not assert that Coca-Cola engaged in unfair dealings in the aftermath of the CBA negotiations. Instead, the unions claim that the terms of the 2009 CBA obligated Coca-Cola to implement a 2% wage increase on October 1, 2010 and a 3% wage increase on October 1, 2011, and that Coca-Cola, by repudiating the terms of the agreement, was liable for damages for breach of contract. Thus the sole claim in this case is most analogous to Hoosier, Kraftco, and a state law claim for breach of contract. Hoosier addressed a claim that the employer breached a CBA by terminating the employment of employees without paying them accumulated vacation pay as provided in the agreement. 383 U.S. at 698, 86 S.Ct. 1107. Kraftco dealt with a union’s failure to make payments into a pension plan as provided in a CBA. 799 F.2d at 1100. The unions’ very similar claim here is that Coca-Cola breached the *713 CBA by failing to provide wage increases at the appropriate time.
The local union’s filing of an unfair labor practice charge and initial filing a hybrid complaint suing the parent union as well as Coca-Cola does not make this an appeal of a hybrid case. The en banc court’s reasoning in Kraftco supports this conclusion. Here, as in Kraftco, the amended complaint “did not allege a breach of the duty of fair representation.... ” Id. at 1106. The duty of fair representation “has primarily been associated with contract negotiation and the enforcement of that contract through grievance processing.” Id. (quoting NLRB v. Local 299, Int’l B’hood of Teamsters, 782 F.2d 46, 50 (6th Cir.1986)) (internal quotation marks omitted). That duty is “implicated only when an individual or group is treated differently by a union than another individual, group, or the collective.” Id. (quoting Local 299, 782 F.2d at 51-52) (internal quotation marks and alterations omitted). No allegations in the second amended complaint implicate this duty, so applying the Michigan six-year limitations period will not frustrate or interfere with the implementation of federal labor law policies. See Cummings, 36 F.3d at 506. Furthermore, as all the parties are sophisticated litigants, the “practicalities of litigation” do not favor the choice of one statute of limitations over the other. See id. at 507.
Accordingly, this is a breach of contract claim governed by Michigan’s six-year statute of limitations. Because the CBA took effect on September 30, 2009 and the local union filed suit on March 23, 2011, the action was timely filed.
B.
We now turn to the merits question of whether the district court erred when it reformed the contract under the doctrine of mutual mistake and granted summary judgment to the unions. The unions argue that the CBA unambiguously provided for effective dates for the wage increases of October 1, 2010 and October 1, 2011 in its “Year 1,” ‘Year 2,” ‘Year 3” terminology. They contend that a wage freeze went into effect on the effective date of the agreement and lasted for the entire ‘Year 1” of the three-year agreement term. Accordingly, the two increases were intended by the parties to go into effect on day one of ‘Year 2” and ‘Year 3,” respectively. The unions assert that the CBA was — in contrast — explicit where the parties intended mid-contract year effective dates, as they did with the fringe benefits, and that lack of specificity on this issue in the TA supports the union’s common-sense reading of the contract. The unions conclude that Coca-Cola should not be allowed to profit from their own mistake in the drafting of the agreement and that the court should reform the agreement to reflect the intent of the parties.
Coca-Cola counters that the language of the final, signed agreement, which includes the company-drafted Appendix A, unambiguously provides for March wage increase dates and that, without clear and convincing evidence of mutual mistake, this language must govern the contractual relations of the parties. The company argues that because the four corners of the properly executed contract unambiguously provide for March dates, our inquiry should proceed no further.
While parol evidence is inadmissible to show additional terms, such evidence is always admissible to show that there has been a mistake in reducing the agreement of the parties to writing as grounds for seeking reformation of a contract. Armistead v. Vernitron Corp., 944 F.2d 1287, 1295 (6th Cir.1991); Restatement (Second) of Contracts § 214(e) (1981). Additionally, the courts have the power to reform a *714 contract to make it conform to the agreement the parties actually made. Casey v. Auto Owners Ins. Co., 273 Mich.App. 388, 729 N.W.2d 277, 284-85 (2006). To obtain reformation of a contract, the plaintiff must prove a mutual mistake of fact by clear and convincing evidence. Id. The showing of a unilateral mistake is not sufficient to obtain reformation. Id. Because the plaintiffs have shown that the parent union did not closely review the amended Appendix A we may look to the agreement ratified by the union in order to determine that actual intent of the parties.
The only factual support for Coca-Cola’s position is that the prior agreement commenced in March of 2006, and, thus, its wage increases took effect in March of each relevant year. This argument is a double-edged sword, however, for another, and perhaps more, sensible interpretation of the 2006 CBA’s relevance is that the initial 0% wage increase of the 2009 CBA should take effect, just as it did in 2006, on the effective date of the agreement, with successive increases taking effect on the respective anniversaries of the agreement.
As the unions contend, the ‘Year 1,” ‘Year 2,” ‘Year 3” language of the agreement, the specific dates provided for other elements of the CBA, and the lack of evidence that the March dates were ever contemplated by the negotiating parties support this interpretation. These facts further support the conclusion that this dispute was not a matter of the unions simply misunderstanding what they were bargaining for but was rather a mutual mistake of the parties: a mistake on the part of Coca-Cola in failing to embody in the writing the actual agreement reached and a mistake on the part of the unions in not identifying this error before executing the agreement. When “terms are used in or omitted from the instrument which give it a legal effect not intended by the parties, ... equity will always grant relief unless barred on some other ground, by correcting the mistake so as to produce a conformity of the instrument to the agreement.” Johnson Family Ltd. P’ship v. White Pine Wireless, LLC, 281 Mich.App. 364, 761 N.W.2d 353, 363 (2008) (quoting Schmalzriedt v. Titsworth, 305 Mich. 109, 9 N.W.2d 24, 28 (1943)) (internal quotation marks omitted).
III.
The district court thus correctly determined that “[t]he record, viewed as a whole, ... indicates that the parties intended to establish wage increases concomitant with the CBA anniversaries, and that the resulting document does not adequately reflect their agreement.” Accordingly, we AFFIRM the district court’s grant of summary judgment.

. The local union originally filed this action as a hybrid case, suing the parent union for unfair representation and Coca-Cola for breach of the CBA. (PagelD 1-2.) The two unions then jointly filed an amended complaint against Coca-Cola for breach of contract. (PagelD 228.) The parent union was removed as defendant. (PagelD 228-29.).